**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

110 SUNPORT, LLC, a New Mexico limited
liability company d/b/a Holiday Inn Express, 786
SUNPORT, LLC, a New Mexico limited liability
company d/b/a Staybridge Suites; and GIBBS
MASTER TENANT LLC, a Texas limited
liability company, TAJDIN GILLANI,
RASHIDA GILLANI, TUSHAR PATEL,
SANGITA PATEL, JAYESH PATEL, NANDA
PATEL, ASHISH PATEL, and YAMINI
PATEL,

                Plaintiffs,

v.                                                                   No. 1:17-cv-01097-KBM-SCY

HOLIDAY HOSPITALITY FRANCHISING
LLC, a Delaware limited liability company, and
DOES 1-5,

                Defendants.

**<u>FIRST AMENDED COMPLAINT</u>**

      Plaintiffs 110 Sunport, LLC ("110 Sunport"), 786 Sunport, LLC ("786 Sunport"), Gibbs

Master Tenant LLC ("Gibbs"), Tajdin Gillani, Rashida Gillani, Tushar Patel, Sangita Patel, Jayesh

Patel, Nanda Patel, Ashish Patel and Yamini Patel (collectively "Plaintiffs"), by and through their

attorneys, Sutin, Thayer & Browne, a Professional Corporation, hereby file this First Amended

Complaint against Defendant Holiday Hospitality Franchising, LLC ("HHF") and Does 1-5 ("Doe

Defendants"), and upon information and belief state as follows.

**I**
**PARTIES**

      1.    Plaintiff 110 Sunport is a New Mexico limited liability company with its principal

place of business in Albuquerque, New Mexico.

2.     Plaintiff 786 Sunport is a New Mexico limited liability company with its principal place of business in Albuquerque, New Mexico.  (Plaintiffs110 Sunport and 786 Sunport may be referred to herein collectively as the "Sunport Plaintiffs.")

3.     Plaintiff Gibbs is a Texas limited liability company registered to do business in New Mexico with its principal office in Albuquerque, New Mexico.

4.     Plaintiff Tajdin Gillani is a resident of Albuquerque, New Mexico and is a purported guarantor.

5.     Plaintiff Rashida Gillani is a resident of Albuquerque, New Mexico and is a purported guarantor.

6.     Plaintiff Tushar Patel is a resident of Albuquerque, New Mexico and is a purported guarantor.

7.     Plaintiff Sangita Patel is a resident of Albuquerque, New Mexico and is a purported guarantor.

8.     Plaintiff Jayesh Patel is a resident of Albuquerque, New Mexico and is a purported guarantor.

9.     Plaintiff Nanda Patel is a resident of Albuquerque, New Mexico and is a purported guarantor.

10.     Plaintiff Ashish Patel is a resident of San Antonio, Texas and is a purported guarantor.

11.     Plaintiff Yamini Patel is a resident of San Antonio, Texas and is a purported guarantor (Plaintiffs Tajdin Gillani, Rashida Gillani, Tushar Patel, Sangita Patel, Jayesh Patel, Nanda Patel, Ashish Patel and Yamini Patel are collectively referred to herein as the "Purported Guarantors").

12.     Upon information and belief, Defendant HHF is a Delaware limited liability company registered and authorized to do business in New Mexico, and subject to service of process in Espanola, New Mexico through its registered agent, C T Corporation System, 206 S. Coronado Ave., Espanola, NM 87532-2792.

13.     Upon information and belief, the Doe Defendants are corporate officers, directors, employees and/or agents of Defendant HHF who worked with or under the direction of Defendant HHF at all times material to this First Amended Complaint, but whom are unknown and/or unidentified to Plaintiffs at this time.  Plaintiffs intend to amend this Complaint to provide the names of the Doe Defendants when the identities of the persons sued herein become known to Plaintiffs in discovery.

## II
## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the parties and subject matter of this Complaint pursuant to Fed. R. Civ. Pro., Rule 20(a)(1), 28 U.S.C. § 1367, and 28 U.S.C. § 1441, as Defendant HHF removed this action from the First Judicial District Court in Rio Arriba County, New Mexico on November 6, 2017.

15.     Venue is proper in the District of New Mexico pursuant to 28 U.S.C. § 1441, 28 U.S.C. § 1391(b)(2), and 28 U.S.C. § 111.

## III
## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

16.     Plaintiffs incorporate the foregoing paragraphs herein by reference.

17.     This lawsuit arises from the pattern and practice of tortious, illegal, unfair, and deceptive conduct and trade practices of Defendants in connection with franchising hotels owned and operated by Plaintiffs 110 Sunport, 786 Sunport, and Gibbs, and in connection with the

execution of the Guaranty and the enforcement of the Guaranty, as further alleged in this Complaint.

18.     Defendant HHF operates as the national franchisor and licensor of numerous hotel brand names and marks including, but not limited to, Hotel Indigo, Holiday Inn, Holiday Inn Express, Staybridge Suites, and others.

19.     Defendants have engaged in tortious, illegal, unfair and deceptive conduct and trade practices in relation to Plaintiff Gibbs' hotel in San Antonio, Texas, and 110 Sunport's and 786 Sunport's hotels in Albuquerque, New Mexico and in relation to the Guaranty and the purported Guarantors.

20.     Defendants improperly and tortiously wronged and victimized Gibbs by their acts and omissions as alleged in this Complaint.

21.     Defendant's acts and omissions, which wronged and victimized Gibbs, gave rise to a dispute between Defendants and Gibbs regarding a hotel in San Antonio, Texas, now formerly known as the Hotel Indigo-Alamo ("Gibbs Dispute").

22.     In retaliation for the Gibbs Dispute, Defendants HHF and the Doe Defendants, or each and any of them, engaged in tortious conduct in relation to, and interference with, the Sunport Plaintiffs' franchise license agreements with respect to renewal thereof, and Defendants' ultimate wrongful failure to renew the Sunport Plaintiffs' respective franchise license agreements.

23.     Defendants improperly and tortiously wronged and victimized the Sunport Plaintiffs by holding them hostage, and using them as leverage and bargaining tools in the Gibbs Dispute with the tortious intent of wrongfully coercing Gibbs' compliance with Defendants' unreasonable and wrongful demands.

24.     Defendants improperly and tortiously wronged and victimized the Purported Guarantors by their actions as alleged in this Complaint.

## THE SAN ANTONIO HOTEL INDIGO-ALAMO

25.     Plaintiffs incorporate the foregoing paragraphs herein by reference.

26.     On or about June 13, 2006, 1909 LTD, a Texas limited partnership, entered into a license agreement with HHF, successor in interest to Holiday Hospitality Franchising, Inc., to operate a hotel located at 105 N Alamo St, San Antonio, TX 78205 ("Hotel Indigo-Alamo") under the Hotel Indigo brand name ("Indigo License Agreement").

27.     On or about June 13, 2006, the Purported Guarantors signed a Guaranty, ostensibly guaranteeing the obligations of 1909 LTD under the Indigo License Agreement.

28.     On or about January 11, 2010, 1909 LTD, Defendant HHF, and Gibbs executed an Addendum to the Indigo License Agreement which replaced 1909 LTD with Gibbs as the Licensee under the agreement.  The Addendum to the Indigo License Agreement was a material change or novation to the Guaranty, without the consent of the purported Guarantors and lacked consideration.

29.     During negotiations and prior to entering into the Indigo License Agreement, 1909 LTD made it known to Defendant HHF that it wanted to include "Riverwalk" in the name used to identify the Hotel Indigo-Alamo.

30.     The Hotel Indigo-Alamo is located approximately 1,800 feet from the San Antonio River and its famous Riverwalk – a continuous walkway adjacent to the river – is one of San Antonio's most popular tourist destinations.

31.     Without justification or explanation, Defendants prohibited Gibbs from using "Riverwalk" in the name used to identify the Hotel Indigo-Alamo.

32.     On information and belief, prior to entering into the Indigo License Agreement, Defendants were in negotiations with another person/entity for the branding of a hotel located at 830 North Saint Mary's, San Antonio, Texas 78205, under the Hotel Indigo brand and marks (the "Hotel Indigo-Riverwalk").

33.     830 North Saint Mary's, San Antonio, Texas 78205 is approximately 1,800 feet from the Hotel Indigo-Alamo at 105 N Alamo St, San Antonio, TX 78205.

34.     Prior to branding the Hotel Indigo-Riverwalk, Defendant HHF conducted an Impact Study to determine the economic impact on the Hotel Indigo-Alamo that would occur by locating a hotel with the same Hotel Indigo brand only 1,800 feet away from the Hotel Indigo-Alamo.

35.     The Impact Study found that the branding of the Hotel Indigo-Riverwalk would have a substantial negative financial impact on the Hotel Indigo-Alamo.

36.     With the knowledge of, and despite, the Impact Study's findings, Defendant HHF permitted and facilitated the operation of the Hotel Indigo-Riverwalk under the Hotel Indigo brand and marks.  Thereafter, Defendants permitted the Hotel Indigo-Riverwalk to operate under the business name "Hotel Indigo San Antonio Riverwalk."

37.     As predicted by Defendant HHF's own Impact Study, the opening of the Hotel Indigo-Riverwalk negatively impacted the Hotel Indigo-Alamo's revenue and operations.

38.     In 2013, Gibbs requested that Defendant HHF allow Gibbs to exit the Indigo Franchise because of the low revenues caused by the duplicate location and branding of the nearby Hotel Indigo-Riverwalk located only 1,800 feet away from Hotel Indigo-Alamo. *See* **Exhibit 1** attached to the original complaint [Doc. 1-2], p. 22.[1]

---

[1] In accordance with LR-CV 10.7 Plaintiffs are not reattaching the Exhibits filed with the original complaint and are, instead, referring to the document title and/or number for ease of reference.

39.     As part of this 2013 request, Gibbs admitted it could not continue to pay for the Hotel Indigo-Alamo, and offered to pay liquidated damages to Defendant HHF for the early termination of the Indigo License Agreement.  (*Id.*)

40.     Defendant HHF failed to respond to Gibbs' 2013 request to exit the Indigo License Agreement and offer to pay liquidated damages for over four months, until early 2014, when Defendant HHF unreasonably refused to allow Gibbs to exit the Indigo License Agreement. *See* **Exhibit 2** [Doc. 1-2], pp. 23-24.

41.     Rather than agree to Gibbs' reasonable request to exit the Indigo License Agreement and pay any liquidated damages at that time, Defendant HHF unreasonably denied Gibbs' request, despite Gibbs' admission of its inability to continue to pay for the Hotel Indigo-Alamo, and instead told Gibbs to restructure the Hotel Indigo-Alamo sales team, implement a new sales strategy, and hire a new general manager for the hotel. *See* **Exhibit 3** [Doc. 1-2], p. 25.

42.     In October 2013, Defendants knew or should have known that Gibbs was struggling financially as a result of Defendants' licensing of the Hotel Indigo-Riverwalk and their unreasonable refusal to terminate the Indigo License Agreement.  Defendants also knew or should have known that Gibbs' financial struggles, which were directly caused by the acts and omissions of Defendants as alleged herein, coupled with Defendant HHF's unreasonable refusal to terminate the Indigo License Agreement placed the Purported Guarantors at an increased risk for liability under the Guaranty.

43.     In light of Defendant HHF's unreasonable refusal to terminate the Indigo License Agreement, Gibbs had no choice but to comply with Defendant HHF's instructions, which Gibbs did, including implementing twelve different sales strategies and restructuring the sales team.  But,

by mid-2015, the Hotel Indigo-Alamo's revenues continued to suffer as a direct result of the duplicate locations and the branding of the Hotel Indigo-Riverwalk. (*Id.*)

44.     By September 2015, with Hotel Indigo-Alamo's revenues still suffering as a direct result of Defendant HHF's licensing of the Hotel Indigo-Riverwalk, Gibbs again asked to terminate the Indigo License Agreement, or to rebrand the Hotel Indigo-Alamo under a different Defendant HHF brand. Gibbs made this request in an effort to save Hotel Indigo-Alamo from financial ruin, which in turn would shield the Purported Guarantors from potential claims against them on the Guaranty. Had Defendants agreed to Gibbs' reasonable request that, in turn, would have helped ensure that Defendant HHF would receive royalties and other fees. (*Id.*)

45.     In September 2015, Defendants knew or should have known that Gibbs was struggling financially as a result of Defendants' licensing of the Hotel Indigo-Riverwalk and their unreasonable refusal to terminate the Indigo License Agreement, or to allow Gibbs to license under another brand. Defendants also knew or should have known that Gibbs' financial struggles, which were directly caused by the acts and omissions of Defendants as alleged herein, unreasonably placed the Purported Guarantors at an increased risk for claims and liability under the Guaranty.

46.     In response to Gibbs' September 2015 request, Defendants passed Gibbs to different HHF personnel, intentionally delayed a response, and ultimately responded over two months later with, upon information and belief, materially false representations in emails and by telephone that the Hotel Indigo-Riverwalk would likely not be relicensed to use the Hotel Indigo brand in 2016. *See* **Exhibit 4** [Doc. 1-2], p. 26. Defendants knew or should have known that these material misrepresentations were false.

47.     The Hotel Indigo-Riverwalk, however, continued to operate under the Hotel Indigo brand and continues to do so to this day.

8

48.     After learning, in or around December 2015, that the Hotel Indigo-Riverwalk would continue to operate under a license with HHF and was not going to be rebranded as HHF intentionally, recklessly and/or negligently lead Gibbs to believe, Gibbs and the Purported Guarantors realized that Defendant HHF and/or the Doe Defendants had made material misrepresentations to Gibbs.

49.     Upon information and belief, Defendant HHF never had any intentions of rebranding or removing the Hotel Indigo branding on the Hotel Indigo-Riverwalk, but rather, intentionally lead Gibbs to believe there was "hope" that such rebranding or removal of Indigo branding was imminent and just around the corner, all the while intentionally and unreasonably delaying and withholding from Gibbs that to which Gibbs was entitled to as a matter of right. (*Id*.)

50.     Instead of permitting the termination of the Indigo License Agreement or the rebranding of the Hotel Indigo-Alamo, Defendant HHF told Gibbs to implement a new revenue generation plan for 2016, but then Defendants failed to follow up on Gibbs' plans for revenue generation. *See* **Exhibit 5** [Doc. 1-2], pp. 27-28.

51.     In an attempt to recover from the losses directly caused by Defendant HHF's licensing Hotel Indigo-Riverwalk in substantially the same location as Hotel Indigo-Alamo, Gibbs requested advertising assistance from Defendant HHF.  (*Id*.)

52.     Defendant HHF did not respond to Gibbs' requests, or offer any assistance to Gibbs. Rather, Defendants intentionally delayed and continually scheduled, and subsequently canceled, multiple meetings with Gibbs' representatives, some of whom were the Purported Guarantors, regarding these requests for assistance which Gibbs was entitled to as a matter of right.  (*Id*.)

53.     Due to Hotel Indigo-Alamo's losses caused by Defendants' acts and omissions and the intentional, wrongful and inequitable conduct of franchising two Hotel Indigo branded hotels

9

within 1,800 feet of each other, unreasonably refusing to allow Gibbs to either (a) exit the franchise by termination of the Indigo License Agreement, or (b) rebrand under a different HHF brand, and due to HHF's continuous and intentional delay and materially false representations regarding the purported non-renewal of Hotel Indigo-Riverwalk's license and branding, Gibbs continued to lose money trying to keep the Hotel Indigo-Alamo financially sound.  Consequently, the Purported Guarantors' risk for liability under the Guaranty was unreasonably and wrongfully increased without justification, for improper purposes, and without consideration.

54.     By mid-2017, in an attempt to keep the Hotel Indigo-Alamo open, and to try to ensure it could pay royalties and fees to Defendant HHF, Gibbs, again, requested that the Hotel Indigo-Alamo be allowed to operate under a different HHF brand. *See* **Exhibit 6** [Doc. 1-2], pp. 29-33.

55.     Instead of working with Gibbs to promote the success of the Hotel Indigo-Alamo, Defendants told Gibbs that Gibbs was in no position to request assistance or rebranding due to its failure to pay fees and royalties related to the Hotel Indigo-Alamo.  Defendants took this position despite the fact that Gibbs' inability to pay was directly caused by Defendants' unreasonable and intentional failure to respond to Gibbs and their repeated unreasonable and intentional failure to take any action to assist Gibbs during the prior six-years.  (*Id*.)  Consequently, the Purported Guarantors' risk for liability under the Guaranty was unreasonably and wrongfully increased without justification, for improper purposes and without consideration.

56.     In a demonstration of good faith, and in response to Defendant HHF's statements and position, Gibbs offered to start paying $5,000 per month on its past due fees to Defendant HHF, in exchange for Defendant HHF working with Gibbs to produce a mutually beneficial plan to make the Hotel Indigo-Alamo a financially viable endeavor.  (*Id*.)

57.     In or around May 2017, Defendant HHF received and accepted a $5,000 payment from Gibbs, and informed Gibbs that it looked forward to a productive June 2017 meeting to come up with a solution to mutually benefit Defendant HHF and Gibbs.  (*Id.*)

58.     As it had repeatedly done in the past, Defendants cancelled the June 2017 meeting. *See* **Exhibit 7** [Doc. 1-2], p. 34.

59.     On July 19, 2017, after continued financial losses and receiving no assistance from Defendant HHF, Gibbs again asked Defendant HHF to allow rebranding of the Hotel Indigo-Alamo to another HHF brand. *See* **Exhibit 8** [Doc. 1-2], pp. 35-36.

60.     Defendants unreasonably denied Gibbs' request to rebrand.  Instead of working with Gibbs to reach a solution, Defendants blamed Gibbs for the Hotel Indigo-Alamo failure despite Gibbs' admission in October 2013 that it could not continue to pay for the Hotel Indigo-Alamo. (*Id.*)

61.     Further, Defendants suggested Gibbs allow Defendant HHF to provide a revenue manager to "turn the hotel around."  However, Defendant HHF had provided a revenue manager in the past for Hotel Indigo-Alamo, but this had no positive impact on its financial performance. (*Id.*)

62.     Gibbs informed Defendant HHF that the continued refusal to rebrand the Hotel Indigo-Alamo, and the demonstrable failure of all of Defendant HHF's proposed, left Gibbs with no option other than to part ways with Defendant HHF, unless either: (a) the Hotel Indigo-Riverwalk were removed and/or rebranded, or (b) Hotel Indigo-Alamo was converted to another HHF brand.  (*Id.*)

63.     In accordance with its prior improper and wrongful conduct, Defendant HHF unreasonably and intentionally failed to do anything to assist Gibbs, and, instead, on or about

August 11, 2017, Defendant HHF sent Gibbs a letter demanding full payment of past due fees by September 14, 2017, or it would terminate the Indigo License Agreement and seek liquidated damages. Defendants made this threat to Plaintiffs despite the fact that Defendant HHF had previously accepted $5,000 in consideration of the payment plan proposed by Gibbs. *See* **Exhibit 9** [Doc. 1-2], p. 37. Consequently, the Purported Guarantors' risk for liability under the Guaranty was unreasonably and wrongfully increased without justification, for improper purposes and without consideration.

64.     Upon information and belief, Defendant HHF intentionally delayed termination of the Indigo License Agreement in order to receive more fees from Plaintiffs through September 2017; which fees Defendant HHF knew, or should have known, Gibbs would be unable to pay as evidenced by (a) Gibbs' 2013 admission of its inability to operate the Hotel Indigo-Alamo, (b) the Impact Study, and (c) the historical decline in revenue at the Hotel Indigo-Alamo after licensing of the Hotel Indigo-Riverwalk. Consequently, the Purported Guarantors' risk for liability under the Guaranty was unreasonably and wrongfully increased without justification, for improper purposes and without consideration.

65.     Upon information and belief, Defendant HHF never intended to work with Gibbs toward a mutually acceptable solution. Instead, Defendant HHF intentionally, wrongfully and inequitably demanded performance of the Indigo License Agreement for more than three (3) years after Gibbs' reasonable request to terminate the Indigo License Agreement, during which time Defendants knew Gibbs was suffering from the negative financial consequences of Defendants' improper conduct--all in order to receive and accumulate past due fees, and create a pretext for invoking the liquidated damages clause. Consequently, the Purported Guarantors' risk for liability

under the Guaranty was unreasonably and wrongfully increased without justification, for improper purposes and without consideration.

66.     Defendants' inequitable and wrongful conduct occurred despite: (a) Gibbs' 2013 offer to pay liquidated damages to terminate the franchising agreement, (b) Gibbs' repeated requests to rebrand the Hotel Indigo-Alamo – based on clear evidence that the San Antonio market could not support two Indigo branded hotels in such close proximity -- and (c) Defendant HHF having breached the agreed under the payment plan of $5,000 per month for past due fees.

67.     Upon information and belief, Defendant HHF intentionally, wrongfully and inequitably used the Indigo License Agreement with Gibbs in an experiment designed to determine how much saturation the San Antonio hotel market could support.  Through its experimentation, Defendant HHF proved that the market could not support two Indigo branded hotels in such close proximity, all to the detriment of Gibbs, and to the ultimate benefit, and unjust enrichment, of Defendant HHF.  Consequently, the Purported Guarantors' risk for liability under the Guaranty was unreasonably and wrongfully increased without justification, for improper purposes and without consideration.

68.     Defendant HHF terminated the Indigo License Agreement on September 14, 2017, nearly four years after refusing Gibbs' 2013 requested termination and offer to pay liquidated damages.

69.     On September 29, 2017, Gibbs received a demand letter from Defendant HHF's attorneys seeking past due fees and liquidated damages allegedly owed under the Indigo License Agreement.

70.     Defendants acted in an intentional, wrongful, and unconscionable manner, thereby directly causing the failure of Hotel Indigo-Alamo.  Defendants' acted intentionally, wrongfully,

and unreasonably to create a pretext for wrongfully terminating the Indigo License Agreement long after Gibbs' 2013 request for termination thereof. Defendants intentionally and unreasonably prolonged the termination of the Indigo License Agreement in order to collect increased fees and liquidated damages, and to create a pretext for suing on the Guaranty signed by the Purported Guarantors.

### THE ALBUQUERQUE SUNPORT HOTELS

71.     Plaintiffs incorporate the foregoing paragraphs herein by reference.

72.     Plaintiff 110 Sunport owns a hotel in Albuquerque, New Mexico, and operates the hotel under the brand "Holiday Inn Express" pursuant to a license agreement with Defendant HHF ("Holiday Inn–Sunport").

73.     Plaintiff 786 Sunport owns a hotel in Albuquerque, New Mexico, and operates the hotel under the brand "Staybridge Suites" pursuant to a license agreement with Defendant HHF ("Staybridge–Sunport").  (The Staybridge-Sunport and the Holiday Inn-Sunport are sometimes collectively referred to herein as the "Albuquerque Hotels").

74.     In August 2016, Plaintiffs 110 Sunport and 786 Sunport (sometimes collectively referred to herein as the "Sunport Plaintiffs") sought renewal of their respective licenses. *See* **Exhibit 10** [Doc. 1-2], pp. 38-40.

75.     Defendants agreed to renew the Sunport Plaintiffs' respective licenses if the Sunport Plaintiffs made an express "property improvement plan" (PIP) immediately. (*Id.*).

76.     The Sunport Plaintiffs tendered and Defendant HHF accepted a total of $110,000 in fees and PIP deposits in consideration for the agreement to renew the Albuquerque Hotels' licenses.

77.     The Sunport Plaintiffs reasonably relied on the agreement with Defendant HHF and the representations and acceptance of these funds to continue operating the Albuquerque Hotels.

78.     In further reasonable reliance on Defendant HHF's representations and acceptance of these funds, the Sunport Plaintiffs hired an architect to begin work on the Albuquerque Hotels in accordance with the PIPs.

79.     In July 2017, the Sunport Plaintiffs requested an update on the status of the renewal of the Albuquerque Hotels licenses. *See* **Exhibit 11** [Doc. 1-2], pp. 41-42.

80.     In response to Sunport Plaintiffs' requests, Defendant HHF and/or the Doe Defendants, made materially false and misleading misrepresentations regarding Defendant HHF's "desire to move forward with the relicenses [sic]." (*Id.*)

81.     In August 2017, the Sunport Plaintiffs requested a letter from Defendant HHF stating that the Albuquerque Hotels' licenses were not going to be renewed due to the Gibbs Dispute ("August 2017 Request"). *See* **Exhibit 12** [Doc. 1-2], p. 43.

82.     Defendants did not deny the Sunport Plaintiffs' allegation or understanding that the Albuquerque Hotels' licenses were not going to be renewed because of the Gibbs Dispute.  Instead, without explanation, Defendant HHF and/or the Doe Defendants returned a majority of the previously paid monies.  (*Id.*)

83.     Upon information and belief, the Doe Defendants acted, directed, instructed or otherwise caused Defendant HHF to refund a portion of the previously paid monies in bad faith, without justification, privilege or excuse, and in retaliation for the Gibbs Dispute.

84.     To this day, the Sunport Plaintiffs do not know whether the licenses for their hotels will be renewed or whether their right and claim to renew the license will be denied in retaliation for the Gibbs Dispute.

85.     Upon information and belief, the Doe Defendants acted, directed, instructed or otherwise caused Defendant HHF not to respond to the Sunport Plaintiffs' August 2017 Request.

The Doe Defendants acted in bad faith, without justification or excuse, with an improper motive and engaged in wrongful and retaliatory actions against all Plaintiffs, including the Purported Guarantors.

86.    Defendants intentionally, wrongfully and tortiously interfered with Sunport Plaintiffs' license renewals based on the Gibbs Dispute, which involves separate hotel owners and franchisees.  *See* **Exhibit 8** [Doc. 1-2], p. 35 ("IHG is not going to allow other deals to move forward until we get the situation under control at the Alamo.")

### THE PURPORTED GUARANTORS

87.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

88.    As a condition of entering into the franchise license agreement between Gibbs and Defendant HHF concerning the Hotel Indigo-Alamo located in San Antonio, Texas, Defendant HHF required the Purported Guarantors to execute a Guaranty on or about June 13, 2006 ("the Guaranty").  *See* Guaranty [Doc. 5-1], pp. 33-35.

89.    The Guaranty purports to make the Purported Guarantors jointly and severally liable for Gibbs' obligations under the Indigo License Agreement for the Hotel Indigo-Alamo. (*Id*.)

90.    After the original Complaint was filed in the First Judicial District Court of New Mexico on October 5, 2017, and after Defendants removed this case to this Court on November 6, 2017, on November 10, 2017, Defendant HHF filed a Complaint against the Purported Guarantors in the United States District Court for the Northern District of Georgia, Atlanta Division, in cause numbered 1:17-cv-04541-ELR ("the Georgia Complaint").

91.    The Georgia Complaint seeks to recover from the Purported Guarantors all money Defendant HHF alleges is due from Gibbs in connection with the Indigo License Agreement.

92.     None of the Purported Guarantors are residents of Georgia, but rather six of them are New Mexico residents and two of them are Texas residents.  Further, the subject Hotels are not located in Georgia, but rather, the Hotel Indigo-Alamo was located in Texas and the Albuquerque Hotels are located in New Mexico, and the owners of the Hotel Indigo-Alamo and the Albuquerque Hotels all maintain their respective principal places of business in Albuquerque, New Mexico.

93.     The Purported Guarantors have claims against Defendant HHF, and the other Defendants, which are pending before this Court and, in addition, the Purported Guarantors have numerous defenses to Defendant HHF's efforts to enforce the Guaranty.

94.     The Purported Guarantors' claims are asserted with respect to, and arise out of, the same transactions, occurrences or series of transactions and occurrences as the claims of Gibbs and the Sunport Plaintiffs, and questions of fact and law are common to all Plaintiffs.

95.     As a direct, proximate, and reasonably foreseeable result of Defendants' failures, unreasonable and intentional refusals, acts and omissions as alleged herein, the Purported Guarantors risks under the Guaranty were significantly and material increased and altered to their detriment, without their consent, and without consideration.

96.     As a direct, proximate, and reasonably foreseeable result of Defendants' failures, unreasonable and intentional refusals, acts and omissions as alleged herein, Defendants knowingly, wrongfully, and intentionally drove Gibbs into financial difficulty and ruin, thereby significantly and materially altering the Purported Guarantors reasonable expectations under the Guaranty and increasing the Purported Guarantors' risks under the Guaranty to their detriment, without their consent, and without consideration..

### COUNT I
### GIBBS' CLAIM FOR BREACH OF CONTRACT FOR PAYMENT PLAN
### (All Defendants)

97.     Plaintiffs incorporate the foregoing paragraphs herein by reference.

17

98.     Gibbs offered to enter a Payment Plan in exchange for Defendants working with Gibbs toward a mutually beneficial arrangement for the success of the Hotel Indigo-Alamo.

99.     Defendants accepted Gibbs' offer when it received and accepted the first payment under the Payment Plan, and stated its intention to work together with Gibbs, as called for by the Payment Plan.

100.    The Payment Plan created and is/was an enforceable contract between Gibbs and Defendants as the Payment Plan contains all elements of a contract, including mutual assent and consideration.

101.    Gibbs performed its obligation under the Payment Plan/contract when it made the first $5,000 payment to Defendant HHF.

102.    Defendant HHF failed and refused to perform and fulfil its obligation under the Payment Plan contract.

103.    Defendant HHF breached the Payment Plan contract when it failed to fulfill its obligations to plan and secure arrangements for the success of the Hotel Indigo-Alamo, and later when Defendants demanded all past due fees, and liquidated damages and refused to work with Gibbs as required by the Payment Plan/contract and the franchise license agreement.

104.    As a result of Defendants' breach of the Payment Plan contract, Gibbs suffered damages in an amount to be proved at trial.

**<u>COUNT II</u>**
**GIBBS' CLAIM FOR PROMISSORY ESTOPPEL**
**(Defendant HHF)**

105.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

106.    Defendant HHF made promises to Gibbs to work with Gibbs toward a mutually beneficial arrangement for the financial success of the Hotel Indigo-Alamo.

18

107.    Defendant HHF knew, or should have known, and reasonably expected to induce action or forbearance from action on the part of Gibbs when it made such promises.

108.    Gibbs acted in reasonable reliance on Defendant HHF's promises by paying the first $5,000 deposit under the Payment Plan contract and when Gibbs forbore from taking any other action or pursuing any remedies available to Gibbs.

109.    Gibbs' actions and forbearance were foreseeable and reasonable based upon Defendant HHFs' promises and amounted to and caused a substantial change in Gibbs' position to Gibbs' detriment.

110.    Defendant HHF did not honor its promise to Gibbs.

111.    As a result of its reasonable reliance on Defendant HHF's promise, Gibbs suffered damages in an amount to be proved at trial.

### COUNT III
### GIBBS' CLAIM FOR MISREPRESENTATION
### (Defendant HHF)

112.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

113.    Defendant HHF made materially false statements of material fact to Gibbs, either by commission or omission, when, prior to executing the license agreement, it failed to inform Gibbs it intended to license another hotel only 1,800 feet from the Hotel Indigo-Alamo, and that such hotel would also be branded under the Hotel Indigo name and be permitted to use the word "Riverwalk" in its name.

114.    Defendant HHF made such misrepresentations knowingly, intentionally, negligently and/or recklessly, and with the intent to induce Gibbs to rely on such statements when making a decision to enter into a license agreement with Defendant HHF for the Hotel Indigo-Alamo.

19

115.    Defendant HHF made materially false statements to Gibbs, either by commission or omission, when, on multiple occasions, it, among other things: (a) lead Gibbs to believe the Hotel Indigo-Riverwalk would cease to be licensed under the Indigo brand name; (a) lead Gibbs to believe Defendant HHF intended to work with Gibbs for the success of the Hotel Indigo-Alamo, and (c) failed to make required disclosures to Gibbs regarding the Hotel Indigo-Riverwalk.

116.    Defendant HHF made all misrepresentations knowingly, intentionally, negligently and/or recklessly, and with the intent to induce Gibbs to rely on such statements to continue operations under the license agreement.

117.    Defendant HHF knew, or should have known, of the falsity of its material representations, or was reckless in making such representations with disregard for the truth or falsity of the statements.

118.    Defendant HHF made such misrepresentations with the intent to deceive Gibbs, and to induce Gibbs to rely on such misrepresentations.

119.    Gibbs reasonably relied on Defendant HHF's statements, without knowledge of the materially false nature thereof.

120.    As a proximate result of Defendant HHF's misrepresentations, Gibbs suffered damages in an amount to be proved at trial.

121.    Defendants' conduct, acts or failure to act as alleged herein, were intentional, malicious, oppressive, willful, reckless, wanton and in bad faith, and Gibbs is entitled to an award of punitive damages.

## COUNT IV
## GIBBS' CLAIM FOR BREACH OF CONTRACT – LICENSE AGREEMENT
### (Defendant HHF)

122.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

123.    The License Agreement between Defendant HHF and Gibbs requires Defendant HHF "to … provide required … training services and programs … make available to [Gibbs] consultation and advice in connection with operations, facilities and marketing … [and] conscientiously seek to … increase the demand for services offered by the [Hotel Indigo Brand]." (Gibbs License Agreement [Doc. 5-1], § 4.).

124.    Defendant HHF failed to provide training, services and programs to Gibbs.

125.    Defendant HHF failed to make available to Gibbs consultation and advice in connection with operations, facilities and marketing of the Hotel Indigo-Alamo.

126.    Defendant HHF failed to conscientiously and in good faith seek to increase the demand for services offered by the Hotel Indigo Brand.

127.    Defendants HHF's conduct in breach of the license agreement caused Gibbs damages in an amount to be proved at trial.

<u>**COUNT V**</u>
**GIBBS' CLAIM FOR BREACH OF THE**
**IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(All Defendants)**

128.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

129.    An implied covenant of good faith and fair dealing exists in every contract.

130.    New Mexico law requires that "neither party [to a contract] do anything that will injure the rights of the other to receive the benefit of their agreement." *Sanders v. FedEx Ground Package Sys, Inc.*, 2008-NMSC-040, ¶ 7.

131.    Georgia law similarly requires that the parties to a contract act "diligently and in good faith" to "comply with all the terms of the contract." *Smithloff v. Benson*, 173 Ga. App. 870, 872, 328 S.E.2d 759, 763 (1985).

132.    The relationship between Defendant HHF and Gibbs is inherently unbalanced in favor of Defendant HHF due to superior bargaining position enjoyed by Defendant HHF and the adhesive nature of the License Agreement.

133.    The License Agreement between Defendant HHF and Gibbs provides Defendant HHF discretion to terminate the License agreement "immediately … if … Licensee … shall admit in writing its inability to pay its debts." (Gibbs License Agreement [Doc. 5-1], § 12(C)(1)(a)).

134.    Defendant HHF owed Gibbs a duty to exercise such discretion in good faith.

135.    Gibbs notified HHF of its inability to continue operating the Hotel Indigo-Alamo, and that Gibbs was losing "a lot of money and [could not] continue to feed it" as early as 2013, and continuously thereafter.  (*See* **Exhibit 1**, [Doc. 1-2], p. 22, **Exhibit 4**, [Doc. 1-2], p. 26, and **Exhibit 6**, [Doc. 1-2], pp. 29-33.)

136.    Defendant HHF unreasonably failed to exercise its discretion to terminate the license agreement upon notification from Gibbs that Gibbs could not continue operating the Hotel Indigo-Alamo.

137.    Defendant HHF's failure to exercise such discretion was in bad faith.

138.    As alleged herein, Defendant HHF acted in bad faith by taking actions injurious to the rights of Gibbs to receive the benefit of its bargain for the operation of the Hotel Indigo-Alamo.

139.    Defendant HHF and/or Defendant Does 1-5 acted in bad faith in failing to disclose, prior to executing the Indigo License Agreement, its/their intent to license another hotel 1,800 feet from the proposed Hotel Indigo-Alamo, and that such hotel would also be branded under the Hotel Indigo name, and would be permitted to use the word "Riverwalk" in its name.

140.    Defendant HHF and/or Defendant Does 1-5 engaged in conduct injurious to the right of Gibbs to receive the benefit of its agreement with Defendant HHF by repeatedly leading

Gibbs to believe that the competing Hotel Indigo-Riverwalk would cease to be licensed under the Indigo brand name.

141.    Defendant HHF and/or Defendant Does 1-5 engaged in conduct injurious to the right of Gibbs to receive the benefit of its agreement with Defendant HHF by failing to provide training, programs, and other services as required by the Indigo License Agreement.

142.    Defendant HHF and/or Defendant Does 1-5 breached the implied covenant of good faith and fair dealing by its/their conduct, practices acts, and omissions as alleged in this Complaint.

143.    As a result of Defendant HHF's and/or Defendant Does 1-5's breach of the implied covenant of good faith and fair dealing, Gibbs suffered damages in an amount to be proved at trial.

**COUNT VI**
**GIBBS' CLAIM FOR BREACH OF IMPLIED FIDUCIARY DUTY**
**(Defendant HHF)**

144.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

145.    Gibbs relied on Defendant HHF to provide all material information regarding the Hotel Indigo franchise, as required by law.

146.    Gibbs reasonably placed trust and confidence in Defendant HHF and Gibbs and Defendant HHF had a confidential relationship with respect to the disclosures required prior to the entry of the License Agreement for the Hotel Indigo-Alamo.

147.    Defendant HHF owed a fiduciary duty to Gibbs to act with the utmost good faith, including the duty to disclose information relating to the Indigo Franchise before entering the License Agreement with Gibbs.

148.    Defendant HHF breached its fiduciary duty through its conduct and practices, and its failure to disclose information when it permitted Gibbs to execute the license agreement without first making disclosure of the anticipated Hotel Indigo-Riverwalk, only 1,800 feet from the Hotel

Indigo-Alamo, and thereafter when it failed to inform Gibbs of the perpetuation of the Hotel Indigo-Riverwalk's license despite repeated requests from Gibbs for such information.

149.    Additionally, Defendant HHF owed a fiduciary duty to Gibbs due to the inherently unbalanced and superior position and relationship between the parties, and the adhesive nature of the License Agreement.

150.    Defendant HHF breached its fiduciary duties to Gibbs as alleged in this Complaint, including, but not limited to, unreasonably refusing to terminate the license agreement in 2013, and unreasonably refusing to allow Gibbs to rebrand under a different HHF license.

151.    Defendant HHF breached its fiduciary duties to Gibbs through its conduct as otherwise alleged in this Complaint.

152.    As a result of Defendant HHF's breach of its fiduciary duties Gibbs suffered damages in an amount to be proved at trial.

## COUNT VII
## GIBBS' CLAIM FOR PRIMA FACIE TORT
### (All Defendants)

153.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

154.    In the alternative, if Defendants' intentional, wrongful, negligent and/or reckless acts or omissions as alleged herein is determined to be technically lawful, Defendants' conduct is nevertheless actionable because Defendants intentionally acted or failed to act in a manner that directly caused harm to Gibbs, or Defendants acted or failed to act with the knowledge that their conduct would cause harm to Gibbs.

155.    Defendants intended that their acts or failure to act as alleged herein would cause harm to Gibbs or they knew or should have known that their acts or failure to act as alleged herein would cause harm to Gibbs.

156.     Defendants engaged in the conduct, acts or failure to act as alleged herein, with an improper purpose, including, but not limited to, extortion, coercion, vengeance, retribution, and retaliation for matters involving the Hotel Indigo-Alamo and Gibbs.

157.     Defendants engaged in such conduct, even if lawful, without justification or excuse.

158.     Defendants' conduct caused the Sunport Plaintiffs harm in an amount to be proved at trial.

159.     Defendants' conduct, acts or failure to act as alleged herein, was intentional, malicious, oppressive, willful, reckless, wanton and in bad faith, and Gibbs is entitled to an award of punitive damages.

## COUNT VIII
## GIBBS' CLAIM FOR RESCISSION OF THE LICENSE AGREEMENT
### (Defendant HHF)

160.     Plaintiffs incorporate the foregoing paragraphs herein by reference.

161.     Defendant HHF failed to substantially perform its obligations under the Indigo License Agreement it entered with Gibbs by failing to provide training, services and programs to Gibbs, failing to make available to Gibbs, consultation and advice in connection with operations, facilities and marketing of the Hotel Indigo-Alamo, failing to conscientiously and in good faith seek to increase the demand for services offered by the Hotel Indigo Brand, and failing to terminate the Indigo License Agreement upon Gibbs' 2013 notification of its inability to continue operating the Hotel Indigo-Alamo.

162.     In light of Defendant HHF's failures, in 2013 Gibbs sought to terminate the Indigo License Agreement, and offered to restore what it had received under the Indigo License Agreement by payment of liquidated damages to Defendant HHF, which would have placed the Defendant HHF in a position substantially similar to its position prior to execution of the Indigo License Agreement.

163.    Defendant HHF refused to accept such restoration, and by its conduct as alleged in this Complaint it made further attempts at restoration impossible.

164.    In light of Defendant HHF's refusal, and the impossibility of any attempt at restoration, Gibbs was forced to remain a party to the Indigo License Agreement to its detriment.

165.    In the absence of rescission of the Indigo License Agreement, Defendant HHF will unjustly profit from its own wrongs.

166.    The Court should, in equity, rescind the Indigo License Agreement between Gibbs and Defendant HHF as of the date of Gibbs' 2013 request to terminate the License Agreement.

**COUNT IX**
**GIBBS' REQUEST FOR DECLARATORY RELIEF**
**(Defendant HHF)**

167.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

168.    An actual controversy exists between Defendant HHF and Gibbs as to whether the Indigo License Agreement should have been terminated in 2013, when Gibbs first requested termination and offered to pay liquidated damages, and whether Defendant HHF is estopped from seeking fees and liquidated damages in excess of those alleged to be owed at the time of Defendant HHF's refusal of Gibbs' 2013 termination request.

169.    This Court has the authority to declare the rights, status and legal relations between Defendant HHF and Gibbs.  Gibbs is entitled to and needs a determination of questions relating to the construction, validity or enforceability of the franchise license agreement and requests a declaration of its rights, status, and legal relations under the franchise license agreement.

170.    Gibbs is entitled to a declaration that the Indigo License Agreement should have been terminated in 2013, when Gibbs first requested termination and offered to pay liquidated damages, and that Defendant HHF is estopped from seeking fees and liquidated damages in excess

of those alleged to be owed at the time of Defendant HHF's refusal of Gibbs' 2013 termination request.

171.     Such a declaration will have a practical effect on the rights and obligations as between Defendant HHF and Gibbs in the future, and will serve a useful purpose in clarifying the past and future legal obligations of the parties hereto.

**COUNT X**
**SUNPORT PLAINTIFFS' CLAIM FOR TORTIOUS INTERFERENCE**
**WITH PROSPECTIVE CONTRACT/ADVANTAGE**
**(Defendants Does 1-5)**

172.     Plaintiffs incorporate the foregoing paragraphs herein by reference.

173.     The Sunport Plaintiffs fulfilled their obligations for license renewals by, among other things, paying required fees and PIP deposits as requested by Defendant HHF, and made substantial investments in reasonable reliance on Defendant HHF's anticipated renewal of these licenses.

174.     Upon information and belief, the Doe Defendants caused the Sunport Plaintiffs to lose the benefits of the prospective contracts with Defendant HHF by directing, instructing or otherwise acting in a manner to cause Defendant HHF: (a) to renege on its prior agreements, (b) to refuse to move forward with relicensing, and (c) to surreptitiously return the relicensing fees paid by the Sunport Plaintiffs.

175.     Upon information and belief, the Doe Defendants caused such loss of benefits to the Sunport Plaintiffs in bad faith, without justification or excuse, and with improper motives including, but not limited to, vengeance, retribution, and retaliation for unrelated matters involving the Gibbs Dispute.  (*See*, *e.g*., Ex. 8.)

176.     The Doe Defendants intentionally caused such loss of benefits and other damages to the Sunport Plaintiffs through improper means and in bad faith.

27

177.    As a proximate result of the conduct of the Doe Defendants, the Sunport Plaintiffs have suffered damages in an amount to be proved at trial.

178.    The Doe Defendants' conduct, acts or failure to act as alleged herein, were intentional, malicious, oppressive, willful, reckless, wanton and in bad faith, and the Sunport Plaintiffs are entitled to an award of punitive damages.

## COUNT XI
## SUNPORT PLAINTIFFS' CLAIM FOR MISREPRESENTATION
### (All Defendants)

179.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

180.    Defendants made materially false statements of fact to the Sunport Plaintiffs, either by commission or omission, regarding the anticipated renewal of the Albuquerque Hotels' licenses.

181.    Upon information and belief, Defendants made such misrepresentations knowingly, intentionally, negligently and/or recklessly, and with the intent to induce the Sunport Plaintiffs to rely on such statements.

182.    The Sunport Plaintiffs reasonably relied on the statements of Defendants, without knowledge of the materially false nature thereof.

183.    As a proximate result of the misrepresentations of Defendants, the Sunport Plaintiffs suffered damages in an amount to be proved at trial.

184.    Defendants' conduct, acts or failure to act as alleged herein, were intentional, malicious, oppressive, willful, reckless, wanton and in bad faith, and the Sunport Plaintiffs are entitled to an award of punitive damages.

## COUNT XII
## SUNPORT PLAINTIFFS' CLAIM FOR UNFAIR
## AND UNCONSCIONABLE TRADE PRACTICES
### (Defendant HHF)

185.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

186.    The New Mexico Unfair Trade Practices Act ("UPA") makes "unfair or deceptive trade practices and unconscionable trade practices in the conduct of trade or commerce unlawful." NMSA 1978, § 57-12-3.  An unfair or deceptive trade practice is defined as "a false or misleading oral or written statement, visual description or *other representation of any kind* knowingly made in connection with the sale, lease, rental or loan of goods or services … by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person[.]"  NMSA 1978, § 57-12-2(D).

187.    Defendant HHF is engaged in trade or business as defined in the UPA and knowingly made representations to the Sunport Plaintiffs in the conduct of trade or commerce which deceived or tended to deceive any person.  NMSA 1978, § 57-12-2(C).

188.    For the reasons alleged in this Complaint, Defendant HHF has engaged in unfair, deceptive, unconscionable, and/or willful acts and practices in violation of the New Mexico UPA, including but not limited to, NMSA 1978, §§ 57-12-2(C)(14) and (17) as well as § 57-12-2(E)(2).

189.    As a proximate result of the unfair, deceptive, unconscionable, and/or willful acts and practices of Defendant HHF, the Sunport Plaintiffs suffered damages in amounts to be proved at trial.

190.    As a result of the violations of the New Mexico UPA by Defendant HHF, the Sunport Plaintiffs are entitled to treble damages in an amount to be proved at trial as well as attorney fees and costs.  NMSA 1978, §§ 57-12-10(B)(C).

## COUNT XIII
## SUNPORT PLAINTIFFS' CLAIM FOR REPUDIATION OF CONTRACT
### (Defendant HHF)

191.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

192.    Defendant HHF requested, received, and accepted the Sunport Plaintiffs' payments for fees in consideration for an agreement to renew the licenses for the Albuquerque Hotels.

193.    By returning these renewal fees, Defendant HHF and/or the Doe Defendants intentionally breached the agreements without justification or excuse, and with an improper purpose.

194.    Alternatively, by returning these fees, Defendant HHF has indicated its anticipated refusal to renew the licenses for the Albuquerque Hotels despite both hotels' strong performance histories.

195.    Defendant HHF's repudiation of the anticipated license renewal agreements have proximately caused the Sunport Plaintiffs damages in an amount to be proved at trial.

## COUNT XIV
## SUNPORT PLAINTIFFS' CLAIM FOR BREACH OF IMPLIED FIDUCIARY DUTY
### (Defendant HHF)

196.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

197.    The Sunport Plaintiffs relied on Defendant HHF to provide all material information regarding the Albuquerque Hotel franchises, as required by law.

198.    The Sunport Plaintiffs reasonably placed trust and confidence in Defendant HHF and the Sunport Plaintiffs and Defendant HHF had a confidential relationship with respect to the forthcoming renewal of the franchise license agreements for the Albuquerque Hotels.

199.    Defendant HHF owed a fiduciary duty to the Sunport Plaintiffs to act with the utmost good faith, including the duty to disclose information relating to the renewal or nonrenewal

of the franchise licenses of the Albuquerque Hotels and the reasons therefor before accepting payment of fees from the Sunport Plaintiffs.

200.    Defendant HHF breached their fiduciary duties owed to the Sunport Plaintiffs through their conduct and practices, and by failing to disclose material information before Defendant HHF received and accepted payment from the Sunport Plaintiffs, and thereafter by failing to provide the Sunport Plaintiffs with any information regarding the renewal, or nonrenewal, of said licenses despite repeated requests.

201.    Defendant HHF breached the fiduciary duty to the Sunport Plaintiffs through conduct as otherwise alleged in this Complaint.

202.    As a result of the breach of the fiduciary duty by Defendant HHF, the Sunport Plaintiffs suffered damages in an amount to be proved at trial.

## COUNT XV
## SUNPORT PLAINTIFFS' CLAIM FOR BREACH OF THE
## IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Defendant HHF)

203.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

204.    An implied covenant of good faith and fair dealing exists in every contract.

205.    New Mexico law requires that "neither party [to a contract] do anything that will injure the rights of the other to receive the benefit of their agreement." *Sanders v. FedEx Ground Package System, Inc.*, 2008-NMSC-040, ¶ 7.

206.    Georgia law similarly requires that the parties to a contract act "diligently and in good faith" to "comply with all the terms of the contract." *Smithloff v. Benson*, 173 Ga. App. 870, 872, 328 S.E.2d 759, 763 (1985).

207.   The relationship between Defendant HHF and the Sunport Plaintiffs is inherently unbalanced in favor of Defendant HHF due to superior bargaining position enjoyed by Defendant HHF and the adhesive nature of the License Agreement.

208.   As alleged herein, Defendant HHF acted in bad faith by taking actions injurious to the rights of the Sunport Plaintiffs to receive the benefit of their bargain for the license renewals.

209.   As alleged herein, Defendant HHF failed to act diligently and in good faith to comply with the terms of the license renewals.

210.   Defendant HHF's actions as alleged herein were undertaken in bad faith, and were injurious to the rights of the Sunport Plaintiffs to receive the benefits of their agreements.

211.   Defendant HHF breached the implied covenant of good faith and fair dealing by its conduct and practices as alleged in this Complaint.

212.   As a result of Defendant HHF's breach of the implied covenant of good faith and fair dealing, the Sunport Plaintiffs suffered damages in an amount to be proved at trial.

## COUNT XVI
## SUNPORT PLAINTIFFS' CLAIM FOR PROMISSORY ESTOPPEL
### (Defendant HHF)

213.   Plaintiffs incorporate the foregoing paragraphs herein by reference.

214.   Defendant HHF promised that if the Sunport Plaintiffs paid required fees and made PIP deposits they "would receive a new license."  *See* **Exhibit 10** [Doc. 1-2], pp. 38-40

215.   Defendant HHF should have reasonably expected to induce action on the part of the Sunport Plaintiffs when it made such promises.

216.   The Sunport Plaintiffs acted in reasonable reliance on Defendant HHF's promise by paying the required fees and making the PIP deposits.

217.   Defendant HHF has not honored its promise.

218.    The Sunport Plaintiffs have suffered injustice as a result of their reasonable reliance on Defendant HHF's promise.

219.    Enforcement of Defendant HHF's promise is required to prevent injustice.

## COUNT XVII
## SUNPORT PLAINTIFFS' CLAIM FOR PRIMA FACIE TORT
### (All Defendants)

220.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

221.    In the alternative, if Defendants' intentional, wrongful, negligent and/or reckless acts or omissions as alleged herein are determined to be technically lawful, Defendants' conduct is nevertheless actionable because Defendants intentionally acted or failed to act in a manner that directly caused harm to the Sunport Plaintiffs, or Defendants acted or failed to act with the knowledge that their conduct would cause harm to the Sunport Plaintiffs.

222.    Defendant HHF knowingly and intentionally accepted PIP deposits and licensing fees from the Sunport Plaintiffs.

223.    Defendant HHF knowingly and intentionally received, accepted and held the PIP deposits and licensing fees, with knowledge that the Sunport Plaintiffs reasonably relied on Defendant HHF's acceptance thereof.

224.    Defendant HHF knowingly and intentionally received, accept, and held the PIP deposits and licensing fees without any intent of actually renewing the Sunport Plaintiffs' respective license agreements.

225.    Defendant HHF improperly received, accepted, and held the PIP deposits and licensing fees with the undisclosed intent to use the Sunport Plaintiffs and the fees paid by them as leverage to negotiate a resolution of the Gibbs dispute in a manner unfair and harmful to Gibbs and to the Sunport Plaintiffs.

226.    Defendant HHF returned a portion of the fees paid by the Sunport Plaintiffs just weeks before Defendant HHF's wrongful termination of the Gibbs license agreement and nearly a year after first accepting the money.

227.    Defendant HHF did not return, and still holds a portion of the fees paid by the Sunport Plaintiffs.

228.    Defendants intended that their acts or failure to act as alleged herein would injure and cause harm to the Sunport Plaintiffs or they knew or should have known that their acts or failure to act as alleged herein would injure and cause harm to the Sunport Plaintiffs.

229.    Defendants engaged in the conduct, acts or failure to act as alleged herein, with an improper purpose, including, but not limited to, extortion, coercion, vengeance, retribution, and retaliation for matters involving the Hotel Indigo-Alamo and Gibbs.

230.    Defendants engaged in such conduct, even if lawful, without justification or excuse.

231.    Defendant HHF's conduct caused the Sunport Plaintiffs harm in an amount to be proved at trial.

232.    Defendants' conduct, acts or failure to act as alleged herein, were intentional, malicious, oppressive, willful, reckless, wanton and in bad faith, and the Sunport Plaintiffs are entitled to an award of punitive damages.

## COUNT XVIII
## PURPORTED GUARANTORS' CLAIM FOR RESCISSION
### (Defendant HHF)

233.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

234.    On or about January 11, 2010, 1909 LTD, Defendant HHF, and Gibbs executed an Addendum to the Indigo License Agreement which replaced 1909 LTD with Gibbs as the Licensee under the agreement.  The Addendum to the Indigo License Agreement was a material change or

34

novation to the Guaranty, without the consent of the purported Guarantors and lacked consideration.

235.    Defendant HHF failed to provide legally required disclosures and other material information to the Purported Guarantors at the times prescribed by law prior the execution of the Guaranty and prior to the Addendum to the Indigo License Agreement which replaced 1909 LTD with Gibbs as the Licensee under the agreement.

236.    Failure to provide such legally required disclosures and other material information at the times prescribed by law is an unfair or deceptive act or practice, and otherwise in violation of applicable law.

237.    Upon information and belief, Defendant HHF failed to provide such disclosures and other material information as required by applicable law with the intent to induce the Purported Guarantors to execute the Guaranty.  Further, upon information and belief, Defendant HHF failed to provide such disclosures and other material information as required by applicable law prior to the Addendum to the Indigo License Agreement replacing 1909 LTD with Gibbs as the Licensee under the agreement to prevent the Purported Guarantors from becoming aware of the material and substantial increase of their risk for liability under the Guaranty, which risk was unreasonably and wrongfully increased without justification and without consideration.

238.    The Purported Guarantors reasonably relied on Defendant HHF to provide all material information and information which Defendant HHF was required by law to provide prior to execution of the Guaranty and prior to the Addendum to the Indigo License Agreement which replaced 1909 LTD with Gibbs as the Licensee under the agreement.

239.    The Guaranty is therefore void *ab initio*, and the Purported Guarantors and Defendant HHF should be restored to the condition in which they were before the Guaranty was

executed and prior to the Addendum to the Indigo License Agreement which replaced 1909 LTD with Gibbs as the Licensee under the agreement.

**COUNT XIX**
**PURPORTED GUARANTORS' CLAIM FOR PRIMA FACIE TORT**
**(All Defendants)**

240.    Plaintiffs incorporate the foregoing paragraphs herein by reference.

241.    In the alternative, if Defendants' intentional, wrongful, negligent and/or reckless acts or omissions as alleged herein is determined to be lawful or otherwise not wrongful, Defendants' conduct is nevertheless actionable because Defendants intentionally acted or failed to act in a manner that directly caused harm to the Purported Guarantors, or Defendants acted or failed to act with the knowledge that their conduct would cause harm to the Purported Guarantors.

242.    Defendants intended that their acts or failure to act as alleged herein would cause harm to the Purported Guarantors or they knew or should have known that their acts or failure to act as alleged herein would cause harm to the Purported Guarantors.

243.    Defendants engaged in the conduct, acts or failure to act as alleged herein, with an improper purpose, including, but not limited to, extortion, coercion, vengeance, retribution, and retaliation for matters involving the Hotel Indigo-Alamo and Gibbs, and the Sunport Plaintiffs.

244.    Defendants engaged in such conduct, even if lawful, without justification or excuse.

245.    Defendant HHF's conduct caused the Purported Guarantors harm in an amount to be proved at trial.

246.    Defendants' conduct, acts or failure to act as alleged herein, was intentional, malicious, oppressive, willful, reckless, wanton and in bad faith, and the Purported Guarantors are entitled to an award of punitive damages.

## COUNT XX
## PURPORTED GUARANTORS' REQUEST FOR DECLARATORY RELIEF
### (Defendant HHF)

247.   Plaintiffs incorporate the foregoing paragraphs herein by reference.

248.   An actual controversy exists between Defendant HHF and the Purported Guarantors as to the enforceability, or not, of the Guaranty, whether the Guaranty should be rescinded, reformed or declared null and void, and whether certain provisions of the Guaranty violate the laws and public policy of New Mexico (or Georgia), and whether Defendant HHF must first proceed against Gibbs prior to taking any action on the Guaranty against the Purported Guarantors.

249.   This Court has the authority to declare the rights, status and legal relations between Defendant HHF and the Purported Guarantors.  The Purported Guarantors are persons interested under the Guaranty who are entitled to and need a determination of questions relating to the construction, validity or enforceability of the Guaranty and request a declaration of their rights, status, and legal relations under the Guaranty.

250.   The Purported Guarantors have sustained or are in danger of sustaining direct injury because of the provisions of the Guaranty and Defendant's HHF's pending action presently pending in Georgia to enforce the Guaranty.

251.   The purported Guarantors are also entitled to a declaration that if Defendant HHF, and/or Does 1-5, acted wrongfully as alleged herein, or otherwise breached any duties protected by law and the public policy of New Mexico (or Georgia), the Guaranty will be rescinded, canceled and held to be null and void.

252.   The purported Guarantors are entitled to a declaration that the Indigo License Agreement should have been terminated in 2013, when Gibbs first requested termination and offered to pay liquidated damages, and that Defendant HHF is estopped from seeking fees and

liquidated damages from the Purported Guarantors in any amount at all, or, alternatively, in excess of the fees and liquidated damages alleged to be owed at the time of Defendant HHF's refusal of Gibbs' 2013 termination request.

253.   Such declarations will have a practical effect on the rights and obligations as between Defendant HHF and the Purported Guarantors in the future, and will serve a useful purpose in clarifying the past and future legal obligations of the Purported Guarantors and the parties hereto.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendant HHF and the Doe Defendants as follows:

A.   Compensatory damages in an amount to be proved at trial to compensate Plaintiffs for the harm caused to Plaintiffs by Defendant HHF's conduct as alleged herein;

B.   Compensatory damages in an amount to be proved at trial to compensate Plaintiffs for the harm caused to Plaintiffs by the Doe Defendants' conduct as alleged herein;

C.   For an award of the equitable relief sought herein;

D.   A declaration on behalf of Gibbs that the Indigo License Agreement should have been terminated in 2013, and that Defendant HHF is not entitled to any past due fees or liquidated damages allegedly incurred thereafter;

E.   A declaration on behalf of the Purported Guarantors that the Guaranty be rescinded, reformed or declared null and void, that certain provisions of the Guaranty violate the laws and public policy of New Mexico (or Georgia), that Defendant HHF must first proceed against Gibbs prior to taking any action on the Guaranty against the Purported Guarantors, and that, alternatively, the Indigo License Agreement should

have been terminated in 2013, and that Defendant HHF is not entitled to any past

due fees or liquidated damages allegedly incurred thereafter;

G. Pre- and post-judgment interest on all damages awarded;

H. Attorneys' fees and costs;

I. Treble damages;

J. Punitive damages against Defendant HHF and the Doe Defendants in an amount be

proved at trial; and

K. For such other and further relief on behalf of Plaintiffs as the Court deems just and

proper.

Respectfully submitted,

SUTIN, THAYER & BROWNE

A Professional Corporation

By: */s/ Christina Muscarella Gooch*
    Christina Muscarella Gooch
    Stevan Douglas Looney
    Robert J. Johnston
    P.O. Box 1945
    Albuquerque, NM  87103
    (505) 883-3433 telephone
    (505) 855-9520 facsimile
    E-Mail:    tmg@sutinfirm.com
            sdl@sutinfirm.com
            rjj@sutinfirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 1, 2017, I filed the foregoing pleading electronically through the CM/ECF System, which caused counsel of record to be served by electronic means.

*/s/ Christina Muscarella Gooch*
Christina Muscarella Gooch

4441062_2.docx